The Honorable John Paul Verkamp State Representative 1405 West Center Street Greenwood, AR 72936-3405
Dear Representative Verkamp:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 Can the City of Greenwood legally use sales tax revenues earmarked for water improvements to fund a study exploring the feasibility of tapping water trapped in abandoned coal mines as a future municipal water supply?
You have raised this question against the following reported factual backdrop:
 The City is conducting a feasibility study, to determine whether or not it is feasible to utilize abandoned underground coal mines, which contain a large quantity of water, as a source for a future water supply for the City of Greenwood. In order to determine whether or not the water is suitable for usage, meets all health guidelines, and that there exists a sufficient quantity of water for its intended use, the City must pump water from the mines at a significant rate, and dispose of the same without affecting other property owner's rights. Therefore, they must necessarily expend a rather large sum of money on this testing. The City has sales tax revenue specifically earmarked for "water improvements," with sufficient funds therein to apply towards this study.
The mayor of Greenwood informs me that the voters approved a 1% sales tax for a period of ten years for a purpose described on the ballot only as "water improvements." He further informs me that the city was motivated to seek voter approval of this tax in order to obtain revenues to clean up certain corroded water pipes, to upgrade the water treatment plant and to explore the possibility of increasing the water supply.
RESPONSE
I am unable directly to answer this question, which raises various factual considerations that I am neither authorized nor equipped to address. In my opinion, primary among the considerations is whether the proposed use you have described would be consistent with the permissible use(s) of the sales tax set forth in the levying ordinance and ballot title. However, I will set forth the general principles of law city officials should apply in evaluating the proposal in question.
First, Ark. Const. art. 16, § 11 provides in pertinent part that "no moneys arising from a tax levied for one purpose shall be used for any other purpose." See also generally Hartwick v. Thorne, 300 Ark. 502,506, 708 S.W.2d 531 (1989). In this regard, the Arkansas Supreme Court has declared:
 In Arkansas-Missouri Power Corp. v. City of Rector, 214 Ark. 649, 654, 217 S.W.2d 335, 337 (1949), this court held that it is to the title of the ordinance and the ballot title "that the electors had the right to look to ascertain what they were asked to approve[.]" This court held further that "[t]he ballot title is the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer[.]" Id. Correspondingly, in Christian Civic Action Comm. v. McCuen, this court observed:
 It has long been regarded as axiomatic that the majority of voters, when called upon to vote for or against a proposed measure at a general election, will derive their information about its contents from an inspection of the ballot title immediately before exercising the right of suffrage. This, indeed, is the purpose of the ballot title.
 318 Ark. 241, 245, 884 S.W.2d 605, 607 (1994) (citations omitted). In Ragan v. Venhaus, 289 Ark. 266, 711 S.W.2d 467 (1986), . . . this court held that "[t]he citizens are entitled to be informed by plain language about what they are voting, and this court has long insisted on that standard." Id. at 271, 711 S.W.2d at 469.
Daniel v. Jones, 332 Ark. 489, 501, 966 S.W.2d 226 (1998).
Accordingly, with regard to the particular sales tax at issue, the overarching question is whether the use of any portion of the tax for the proposed feasibility study would constitute a diversion of the tax from its stated purpose. I have not seen the levying ordinance or the ballot title, and the only specific information I have regarding the sales tax levy in this instance is that the ballot represented the tax revenues as being pledged to "water improvements." Although I believe that expending tax revenues to test the feasibility of expanding a water supply might, in the abstract, be consistent with a pledge of those revenues to "water improvements," I cannot opine to this effect with respect to the specific Greenwood project you have described. Only a finder of fact familiar with all of the attendant circumstances, including the contents of the levying ordinance and the entire ballot, could inform city officials that the projected expenditures are warranted.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh